COURT OF APPEALS
DECISION
DATED AND FILED

September 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2195-FT**

STATE OF WISCONSIN

Cir. Ct. No. 2020FA270

IN COURT OF APPEALS
DISTRICT III

IN RE THE MARRIAGE OF:

THOMAS A. AKERS,

    PETITIONER-APPELLANT,

 V.

CHERYL R. AKERS,

    RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Eau Claire County: SARAH MAE HARLESS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Thomas A. Akers appeals from a judgment of divorce.[1]  He argues that the circuit court erroneously exercised its discretion in dividing the parties' property by including assets in the marital estate that he had inherited and by failing to account for the substantial assets he brought into the marriage.  We disagree and affirm.

## BACKGROUND

¶2     Tom and Cheryl R. Akers[2] were married on December 3, 2016.  This case began as an annulment action on July 7, 2020.  Cheryl counterclaimed for divorce and moved to dismiss Tom's petition for annulment.  After a hearing, the circuit court denied the annulment and ordered that the matter proceed as a divorce.  At the time their divorce was finalized, the parties were both in their mid-sixties, both were retired, and they had no children.  Cheryl was also disabled.  This was Tom's second marriage, following the death of his first wife, and Cheryl's third marriage, following two prior divorces.

¶3     The circuit court held a bench trial on September 15, 2021, on the sole issue of property division.  There, both parties testified regarding the property they brought into the marriage and the contributions that were made during the marriage.  Prior to their marriage, Tom and Cheryl purchased one of Cheryl's former husband's interest in a property on Highway 27 in Augusta, Wisconsin

---

[1] This is an expedited appeal under WIS. STAT. RULE 809.17 (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.  Pursuant to this court's order on January 12, 2022, and a presubmission conference, the parties have submitted memorandum briefs.  *See* RULE 809.17(1).

[2] For ease of reading, we will refer to the parties in this appeal by their first names.  We note that Thomas refers to himself in his briefing before this court as "Tom," so we will do so as well.

("Highway 27 property"), with proceeds Tom received from the sale of property he owned with his deceased wife, fifty percent of which he had inherited from her estate. The Highway 27 property became Tom's and Cheryl's marital home. Cheryl was included on the Highway 27 property's deed and mortgage, but Tom testified that he made all the mortgage payments from his bank account.[3] In addition to making all the mortgage payments, Tom stated that he paid for "[a]bsolutely everything" during the marriage and alleged that the parties "generally maintained separate finances." Cheryl testified, however, that she also contributed financially during the course of the marriage.

¶4      Both parties testified that they commingled premarital funds and changed the title on premarital property, and Tom provided testimony regarding property that he claimed had remained his inherited assets. As to inherited property not subject to division, Tom testified that he had inherited an IRA from his former wife and "20 plus" guns from his father. As to other premarital property, the testimony revealed that Tom added Cheryl to at least one of his bank accounts, which he used to pay "household bills" and "everything to keep the house running"; added her as a beneficiary on a life insurance policy; and added her name to a parcel of land on Lark Road that he owned prior to their marriage. In Tom's words, he "thought we [were] starting a new life together."

¶5      Following the close of testimony, the circuit court granted the judgment of divorce and, after considering each of the factors under WIS. STAT. § 767.61(3), found that an unequal property division was appropriate. The court

---

[3] Tom and Cheryl also purchased a second piece of property together, which had also previously been jointly owned by Cheryl and one of her former husbands, but that property was sold prior to the divorce. Tom testified that he also made all of the payments on that mortgage.

3

awarded sixty percent of the marital estate to Tom and forty percent to Cheryl, resulting in an order for Tom to make a $279,450.22 equalization payment to Cheryl. The court specifically found that "all of the parties' property is part of the marital estate subject to division with the exception of [Tom's] inherited assets, specifically [the IRA from his first wife] and his inherited guns." Tom appeals.

## DISCUSSION

¶6    The division of property rests within the sound discretion of the circuit court. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will uphold a discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987). The court's findings of fact will be affirmed unless clearly erroneous. WIS. STAT. § 805.17(2). The court is the ultimate arbiter of witness credibility, *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979), and we will search the record for reasons to sustain the court's discretionary decisions, *Steiner v. Steiner*, 2004 WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740.

¶7    Property division in a divorce is subject to WIS. STAT. § 767.61(3), which establishes a presumption in favor of the equal division of marital property. A circuit court may deviate from the presumptive equal division, however, after considering the statutory factors outlined in § 767.61(3). *See LeMere*, 262 Wis. 2d 426, ¶16. The record must reflect that the court considered all of the applicable statutory factors before we may conclude that it applied the proper legal standard to overcome the presumption of equal property division. *See id.*, ¶17; *see also* § 767.61(2) (excepting inherited property from property division).

¶8     On appeal, Tom first argues that the circuit court erroneously exercised its discretion by including proceeds from the sale of an inherited home in the marital estate. Tom inherited a home in Hudson, Wisconsin ("the Hudson home"), after his first wife's death. He received $120,000 from the home's sale, and he deposited those funds into an account in his name prior to his marriage to Cheryl. According to Tom's testimony and arguments of counsel, Tom used the funds from the Hudson home's sale for the down payment, repairs, and updates on the Highway 27 property. Thus, Tom argues, "$60,000, representing [Tom's first wife's] interest in the home, should have been excluded from the marital estate" under WIS. STAT. § 767.61(2)(a)3.

¶9     Cheryl argues that Tom forfeited this argument regarding his inherited property by not raising it in the circuit court. *See Schinner v. Schinner*, 143 Wis. 2d 81, 94 n.5, 420 N.W.2d 381 (Ct. App. 1988) ("[A]n issue must be raised in the [circuit] court to be eligible for review upon appeal."). In particular, at trial, Tom was asked, "Is there any property that you have that's inherited or gifted, other than the firearms that you mentioned?" He responded, "Nothing. Absolutely nothing."[4] Thus, Cheryl claims, Tom did not argue that any other assets—aside from the IRA from his first wife and the guns—should be excluded from the marital estate. Tom disagrees, noting that it is clear, based on his testimony and the arguments of counsel, that he was arguing for the exclusion of the proceeds from the sale of the Hudson home from the marital estate.

¶10    Under these circumstances, we refuse to conclude that Tom forfeited this argument. Our review of the record suggests that the question presented to

---

[4] Tom later clarified that he also inherited the IRA from his first wife.

Tom could be construed in two ways: whether he is claiming any other property as gifted or inherited or whether he had any inherited assets remaining at the time of the hearing. Based on the evidence and the arguments in the record, as well as the circuit court's final property division order, we infer that the court understood that in responding to the question, Tom testified that he had no other inherited assets remaining at the time of the final hearing. We therefore conclude that the issue was appropriately addressed to the court's attention, we refuse to consider Tom's argument forfeited, and we will address the merits. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he [forfeiture] rule is one of judicial administration and ... appellate courts have authority to ignore the [forfeiture].").

¶11    On the merits, we conclude that the circuit court did not erroneously exercise its discretion by failing to consider the inherited nature of the funds or by failing to provide them to Tom in the property division. "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." *Derr v. Derr*, 2005 WI App 63, ¶10, 280 Wis. 2d 681, 696 N.W.2d 170. Pursuant to WIS. STAT. § 767.61(2)(a), however, property a spouse acquired as a gift or by inheritance is not subject to division at divorce. The burden of proving that property is not divisible is on the party seeking to exempt the property from division, and he or she must show both that the property was a gift or an inheritance and "that the character and identity of the property has been preserved." *Wright v. Wright*, 2008 WI App 21, ¶12, 307 Wis. 2d 156, 747 N.W.2d 690 (2007); *see also Derr*, 280 Wis. 2d 681, ¶¶8, 15, 23 (explaining that "the 'identity' inquiry is purely a matter of tracing; it is the job of determining the value and source of an asset or the value and source of a part of an asset" and "the 'character' inquiry involves no more and no less than determining whether the

owning spouse intended to donate non-divisible property to the marriage, that is, did the owning spouse have donative intent").

¶12    Here, the circuit court explicitly found that the inheritance was commingled and that Tom intended to add the inherited assets to the marital estate. The court stated,

> Each party did testify to their contributions to the marriage. Each party acted in a manner consistent, at least at the beginning of the marriage, with a desire to be fully committed to this and in this.  It appeared that Cheryl put Tom's name[] on property.  Tom did the same for Cheryl. Certainly at the beginning these parties were acting very much like a married couple commingling their assets with intent to be in things together.  As noted, Tom did bring more money into the marriage and certainly seems to have paid more during the marriage, but Cheryl did as well and that's—did pay money into the marriage as well and that's not uncommon in marriages that one person will pay more than the other that does happen.

The court found that, aside from the IRA from Tom's first wife and the guns that he inherited, "[e]very[thing] else is marital property and the presumption is that it should be equally divided."

¶13    The record supports the circuit court's findings in this regard.  Both parties testified that they commingled many premarital funds and changed the title on their premarital assets to be held jointly, transforming them into marital assets. Further, Tom ignores the parties' marital status when claiming that "he" paid all of the bills and expenses from individual accounts.  Regardless of who paid for what, all marital property is presumed to be divided equally.  Based on the evidence contained in the record, the court's findings are not clearly erroneous.

¶14    In support of his position that inherited proceeds from the sale of the Hudson home were erroneously included in the marital estate, Tom cites *Schwartz*

*v. Linders*, 145 Wis. 2d 258, 263, 426 N.W.2d 97 (Ct. App. 1988), for the proposition that "a [circuit] court has a statutory imprimatur to consider the prior inherited status of *divisible* property." Here, there is no evidence that the circuit court failed to consider the prior inherited status of the funds. The court clearly found that the funds were commingled and that Tom had intentionally brought the funds into the marital estate. Despite Tom's assertion that "the [c]ourt did not reference the Highway 27 property or how it was acquired," the court explained that "Cheryl brought in real estate and Thomas brought in money. He brought in more money certainly and certainly used some of that money on the real estate that Cheryl had, the testimony on that is clear. However, both parties did bring assets into the marriage." Thus, the court understood and considered the prior status of the funds Tom brought into the marital estate.

¶15    Further, we were clear in *Schwartz* that whether the "inherited status of *divisible* property" results "in an unequal division of the property depends upon the facts of each case." *Id.* at 263. In this case, Tom *did* receive an unequal property division, as *Schwartz* suggested. The unequal division was simply not to the extent that Tom desired.

¶16    Tom's next argument on appeal is that the circuit court failed to fully consider the WIS. STAT. § 767.61(3) factors in dividing the parties' marital property. In particular, Tom argues that the court failed to adequately consider the short length of Tom and Cheryl's marriage, § 767.61(3)(a), and the property Tom brought into the marriage, § 767.61(3)(b). According to Tom, the "rationale in creating the presumption of equal property division" does not apply in this case because "the parties married in their sixties and did not raise any children," and the court's decision "resulted in an inadequate award to Tom and a windfall to Cheryl."

¶17    Tom cites two cases in support of his position.  First, in ***Jasper v. Jasper***, 107 Wis. 2d 59, 62, 318 N.W.2d 792 (1982), our supreme court affirmed a property division award where the circuit court employed a two-step procedure to divide the property:  the court first returned the assets that each party brought into the marriage and then divided the remaining marital estate.  ***Id.***  The court ultimately awarded forty percent of the marital estate to the wife and sixty percent to the husband. ***Id.***

¶18    Second, in ***Hokin v. Hokin***, 231 Wis. 2d 184, 189, 605 N.W.2d 219 (Ct. App. 1999), this court addressed the use of a coverture fraction to divide a pension, which involves using a fraction where the numerator is the length of the marriage and the denominator is the total amount of time funds were put into the pension plan.  We concluded that in exercising its discretion, the circuit court "may, depending on the facts in a particular case," use the coverture fraction to divide property.  ***Id.*** at 194.  In other words, it is not necessarily an erroneous exercise of discretion if the court does not use the coverture fraction.  In fact, we reversed the court's decision on property division in ***Hokin***, concluding that the use of a coverture fraction was an erroneous exercise of discretion in that case because it did "not adequately recognize the length of the marriage, [the wife's] contributions to it, or the [presumption of equal division]." ***Id.***  We stated, however, that "[i]n a shorter marriage, such an emphasis on which party generated the assets that make up the marital estate might well be appropriate." ***Id.*** (footnote omitted).

¶19    Tom essentially argues that the circuit court should have applied the methodology used in either ***Jasper*** or ***Hokin***.  However, neither ***Jasper*** nor ***Hokin*** mandate the method of property division utilized in those cases.  Thus, the court's failure to employ either the two-step ***Jasper*** method or a coverture fraction in

dividing the parties' property does not constitute an erroneous exercise of discretion or a failure to properly consider the factors under WIS. STAT. § 767.61(3).

¶20    Instead, the record is clear that the circuit court appropriately addressed all of the factors under WIS. STAT. § 767.61(3), including the length of Tom and Cheryl's marriage and the property Tom brought into the marriage. The court heard and considered Tom and Cheryl's testimony regarding each of their financial contributions, and it found that both parties contributed to the marriage financially. The court acknowledged that "Tom did bring more money into the marriage and certainly seems to have paid more during the marriage" but noted "that's not uncommon in marriages." Tom does not challenge the court's findings as clearly erroneous.

¶21    The circuit court also repeatedly reaffirmed that this was a "short term marriage" and, more specifically, "a later in life … short term marriage." In fact, the length of the marriage and the property Tom brought into the marriage were specifically noted as factors necessitating an unequal property division: "Again, based on the short term nature of the marriage and the fact that Thomas had put more, significantly more money in[,] I do find it fair and equitable for a deviation [from the presumption of equal division]."

¶22    Essentially, Tom asks us to reweigh the statutory factors, which we cannot and will not do. The circuit court considered the proper factors, gave them weight supported by the evidence, and reached a reasonable decision. This is the definition of a proper exercise of discretion. The fact that Tom disagrees, or he believes that the court should have accorded one or more factors additional weight, does not mean that the court erroneously exercised its discretion. As

required, the court started with the presumption of equal property division, weighed the factors for and against deviation, and, as requested by Tom, decided that the two factors in Tom's favor (the parties' short term marriage and the property Tom brought into the marriage, some of it inherited) merited an unequal property division.

¶23    "[M]arriage is a shared enterprise or joint undertaking," *Hokin*, 231 Wis. 2d at 198, and the circuit court found that Tom and Cheryl "acted in a manner consistent, at least at the beginning of the marriage, with a desire to be fully committed to this and in this" and "with intent to be in things together."  We echo the court's acknowledgment that this type of case "is the reason that Prenuptial Agreements exist."  As the court explained, "The law is fairly clear that with the limited exceptions … assets are considered to be marital assets.  The assumption is that when you get married[,] you are in it together, and intending that that be the case."

> *By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

11