**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 29, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP2135**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023FA103

**IN COURT OF APPEALS**
**DISTRICT IV**

IN RE THE MARRIAGE OF:

PORSCHE LYNN KETTELHUT,

PETITIONER-APPELLANT,

V.

JONATHAN LEE KETTELHUT,

RESPONDENT-RESPONDENT.

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Porsche Lynn Kettelhut (Porsche) appeals the property division in a judgment of divorce from Jonathan Kettelhut (Jonathan). Specifically, Porsche challenges the circuit court's award to Jonathan of proceeds from Jonathan's sale of real estate that was titled in Jonathan's name, referred to as the "Court Street property," which Jonathan and Porsche had decided to purchase and renovate using money inherited by Jonathan. Before being used to purchase and renovate the Court Street property, the money inherited by Jonathan was deposited into two bank accounts in Jonathan's name. Pursuant to agreements executed by Jonathan and Porsche: the money inherited by Jonathan and deposited into the two bank accounts would be used to purchase, renovate, and sell properties; any profits from a sale would be divided between the parties according to designated percentages; and the proceeds from each sale, less profits, would be deposited into Jonathan's bank accounts and used to purchase, renovate, and sell additional properties. Jonathan and Porsche acted consistently with these provisions during their marriage.

¶2 On appeal, Porsche argues that the proceeds of the sale of the property at issue are divisible because the money inherited by Jonathan that was used to purchase and renovate the property had been previously used to purchase and renovate properties that were titled in both parties' names. We conclude that the circuit court's finding that Jonathan did not intend to donate the proceeds to the marriage is not clearly erroneous, and, accordingly, we conclude that the proceeds from the sale of the property at issue are not divisible. Accordingly, we affirm.

**BACKGROUND**

¶3      Porsche and Jonathan were married on October 6, 2007. Porsche filed for divorce in February 2023. The circuit court held a bench trial over the course of three days between April and September 2024. The following information comes from the court's findings of fact and the parties' testimony and exhibits credited by the court.

¶4      In 2014, Jonathan inherited approximately $350,000 from his mother. Jonathan deposited this money into a Fidelity account titled solely in his name and then transferred approximately $293,000 of that money into another Fidelity account, also titled solely in his name, to be only used for purchasing, renovating, and selling real estate properties.[1]

¶5      After Jonathan received the inheritance from his mother, the parties began purchasing, renovating, and selling properties in attempts to earn profits.

¶6      Jonathan and Porsche executed two separate agreements providing how the money in Jonathan's Fidelity accounts would be used to purchase,

---

[1] Both of the Fidelity accounts initially contained only Jonathan's inherited money, and proceeds (less profits) from the sales of properties purchased and renovated using that inherited money were subsequently deposited into one or the other of the two accounts. For some of the properties the record is unclear regarding which of the two Fidelity accounts was the source of the money used to purchase the properties and into which of the two accounts Jonathan deposited the proceeds when the properties were sold. Neither the parties nor the circuit court attached significance to this lack of clarity. For ease of reading, we generally refer to these two accounts collectively as Jonathan's Fidelity accounts.

Separately, the parties and the circuit court sometimes refer to the real estate investment strategy of using money (here, the money in Jonathan's Fidelity accounts) to purchase, renovate, and sell properties on a relatively short time line by using the familiar phrase, "flipping houses," or as the circuit court here sometimes put it, "the flip business."

renovate, and sell properties and how anticipated profits from the sale of each property would be divided between them.

¶7 Jonathan and Porsche executed the first agreement in March 2016, after the first property was sold and just before the second property was sold. That agreement addressed the parties' allocation of the proceeds from the sale of properties renovated and sold, stating that Porsche "is to get at minimum, 75% of the sale profits of each property and Jonathan is to get the remaining percentage of 25% o[f] profits of each property, starting with the [third] property. What remains goes into the next … property [to be purchased, renovated, and sold]." The agreement also stated that Jonathan and Porsche would "equally decide[]" how the proceeds remaining after the division of profits would "be allocated, invested, and spent [on the next property] … even if Jonathan … keeps a majority of the money in his personal accounts." The agreement specifically provided that "Porsche is to get $5000 of the $107,163.74, from [the second property] as personal money but the rest of the money will be used to purchase a property very soon[,] within the next couple weeks."

¶8 As the parties had agreed, Jonathan used the money in his Fidelity accounts to purchase and renovate properties, and once a property was sold, he returned to his Fidelity accounts the proceeds from that sale, less any profits from the sale. The profits were split, with a portion paid directly to Porsche and another portion deposited into a separate account belonging to Jonathan not at issue here.

¶9 Jonathan and Porsche purchased, renovated, and sold four properties after the March 2016 agreement, and the deeds for each of the four properties, as well as the deed for the first property sold before the agreement, listed Jonathan and Porsche as joint titleholders. In addition, at least two of these five property

deeds listed the property as "survivorship marital property," meaning that if one spouse were to die the property would automatically pass to the surviving spouse.

¶10     In June 2019, Jonathan and Porsche executed a second agreement. The second agreement was signed because Jonathan realized that "our paperwork didn't match what we were doing." In other words, Jonathan was purchasing and renovating the properties using his inherited money, but the deeds showed that Jonathan and Porsche were purchasing the properties together, which did not reflect the shared intent of the parties. This agreement stated, among other things, that: "Jonathan will continue to discuss/include and decide with Porsche how the money that is being used for the real[ ]estate house flipping business/investments is allocated, invested and spent"; "Porsche will earn money on the profit of the sales of each house after expenses (IE: purchase price, utilities, taxes, insurance, repair cost)"; and "[e]verything is still the same as the last 5+ years, including Porsche's 75% of the profit of each sale whether properties and purchase and sales agreements are just in Jonathan['s] … name or not." Jonathan sold an additional three properties after the execution of the second agreement. Jonathan was listed as the sole titleholder for each of these properties.

¶11     While the divorce was pending, Jonathan sold a fourth property, the Court Street property, which was the final property purchased and renovated during the marriage. Jonathan was listed as the sole titleholder for the Court Street property. The purchase price and renovation costs totaled more than the sale price, resulting in no profit from the sale of the Court Street property. The proceeds from the sale of the Court Street property were held in trust pending the final divorce judgment.

¶12 In the circuit court, Porsche argued that the proceeds from the sale of the Court Street property are divisible property because the money used to purchase and renovate the property had previously been used to purchase jointly-titled properties. Jonathan argued that the proceeds are his non-divisible property because each of the properties was purchased with his traceable, inherited money and because he did not intend to donate the proceeds from the sales of the properties to the marriage. Specifically, while Jonathan acknowledged that the use of the inherited money to purchase jointly-titled property resulted in a presumption of donative intent, he argued that that presumption was rebutted by other evidence, including the two written agreements and the consistent practice of the parties of returning the money used to purchase and renovate the properties to Jonathan's Fidelity accounts.

¶13 The circuit court determined that the money in Jonathan's Fidelity accounts is his non-divisible property because it "reflect[s] inheritances that he received from his mother, and [it was] kept separate." The court found that, "although the parties did title certain real estate as marital property at some point, the parties, from the beginning, from the time that inheritance was received, accounted for it separately. And [the money in Jonathan's Fidelity accounts is] traceable back to that inheritance." The court also found that

> the parties freely and fairly bargained for how that individual property might be used and that was that [Jonathan] would put up the principal for flip homes. The parties would then apply labor together, and then any profits received from the sale of those homes be divided 75 percent to [Porsche], 25 percent to [Jonathan], and, in fact, that's what they did over the course of these properties. And it's apparent, not just from the … agreements …, but apparent from the record of what they did, that that was the agreement of the parties.

Based on these findings, the court determined "that the inheritance from [Jonathan's] mother was individual property and remained individual property as it was applied towards the flip business. Profits were accounted for separately…."

¶14     Regarding the proceeds from the sale of the Court Street property, the circuit court found that there was no profit from its sale since the property sold for less than the amount of money from Jonathan's Fidelity accounts used to purchase and renovate the property (which the court referred to as "the principal put into the property"). As a result, the court found, there was no profit to divide between the parties under the terms of the second agreement. Based on the court's additional finding that "the agreement was that the principal put into the property would remain with [Jonathan]," the court awarded the proceeds from the sale of the Court Street property solely to Jonathan as non-divisible property.

¶15     Porsche appeals.[2]

---

[2] Porsche raises a number of other issues in her notice of appeal, but her briefing on appeal addresses only whether the circuit court erred by determining that the proceeds from the sale of the Court Street property are Jonathan's non-divisible property. We address only the issue briefed. *See Post v. Schwall*, 157 Wis. 2d 652, 657, 460 N.W.2d 794 (Ct. App. 1990) ("Arguments raised but not briefed or argued are deemed abandoned by this court.").

Separately, we note that Porsche's appellate briefs fail to comply with the following rules and remind counsel of the obligation to comply with these rules.

Porsche's initial appellant's brief does not comply with WIS. STAT. RULE 809.19(8)(bm) (2023-24), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (providing that, when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). As our supreme court explained when it amended the rule in 2021, the pagination requirement ensures that the numbers on each page of the brief "will match … the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of an electronically filed brief. S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021).

(continued)

**DISCUSSION**

¶16　"A circuit court's decision on how to divide divisible property is discretionary." ***Derr v. Derr***, 2005 WI App 63, ¶9, 280 Wis. 2d 681, 696 N.W.2d 170 (emphasis omitted).　However, this appeal involves the determination of whether property is divisible or non-divisible, which is a mixed question of fact and law.　*See **id.***, ¶¶9, 45.　We accept the circuit court's findings of fact unless clearly erroneous, but the ultimate characterization of property as divisible or non-divisible is a question of law that we review de novo.　***Id.***, ¶¶9, 45, 51 & n.15.

¶17　"The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce."　***Id.***, ¶10.　"There is a statutory exception for property acquired (1) by gift, (2) by reason of death, or (3) with funds from either of the first two sources."　***Id.***; *see* WIS. STAT. § 767.61(2)(a).　Specifically, that statute provides that property "is not subject to a property division" if a party acquires the property "prior to or during the course of the marriage": (1) "As a gift from a person other than the other party"; (2) "By reason of the death of another"; or (3) "With funds acquired in a manner provided in subd. 1. or 2."　§ 767.61(2)(a).

¶18　"When a party to a divorce asserts that property, or some part of the value of property, is not subject to division, that party has the burden of showing that the property is non-divisible at the time of the divorce."　***Derr***, 280 Wis. 2d

---

In addition, Porsche's briefs refer to the parties by their status on appeal, and not by their names, contrary to WIS. STAT. RULE 809.19(1)(i).　Use of these designations can easily create confusion that is an unnecessary burden for this high-volume court.

All references to the Wisconsin Statutes are to the 2023-24 version.

681, ¶11.  To meet that burden, the party must show both: (1) that the property asserted to be non-divisible can be traced to gifted or inherited property (referred to in case law variably as "identity" or "tracing"); and (2) that the owning spouse did not intend to donate the non-divisible property to the marriage (referred to variably as "character" or "donative intent").[3]  ***Id.***, ¶¶14-15, 23.  Porsche does not dispute that all of the Court Street proceeds can be traced to the money that Jonathan inherited from his mother, so the only issue before this court is whether Jonathan intended to donate the Court Street proceeds to the marriage.

¶19     Donative intent is ultimately a question of subjective donative intent, which typically presents a question of fact.  *See **id.***, ¶¶25, 27-29.  Actions that normally would evince an intent to gift property to the marriage, such as transferring non-divisible property to joint tenancy, lead to a presumption of donative intent.  ***Id.***, ¶¶33, 35.  If no "countervailing evidence" is presented, such actions constitute donative intent as a matter of law.  ***Id.***, ¶33.  However, the presumption is "subject to rebuttal by 'sufficient countervailing evidence.'"  ***Id.*** (quoting ***Trattles v. Trattles***, 126 Wis. 2d 219, 222-24, 376 N.W.2d 379 (Ct. App. 1985)).  We defer to the circuit court's findings of historical fact with regard to the owning spouse's subjective intent "unless those findings are clearly erroneous." ***Derr***, 280 Wis. 2d 681, ¶60.

¶20     Here, because the non-divisible property that Jonathan inherited from his mother was initially used to purchase jointly-titled property, Porsche argues that there is a presumption that Jonathan had donative intent with regard to

---

[3] In this opinion, following the lead of ***Derr***, we generally use the terms "tracing" and "donative intent" to refer to these two distinct inquiries.  *See **Derr v. Derr***, 2005 WI App 63, ¶¶22, 24, 280 Wis. 2d 681, 696 N.W.2d 170.

the proceeds from the sale of the Court Street property, even though that property was titled in Jonathan's name. *See id.*, ¶¶34-35 (transferring non-divisible property to joint tenancy creates a rebuttable presumption of donative intent); *Steinmann v. Steinmann*, 2008 WI 43, ¶43, 309 Wis. 2d 29, 749 N.W.2d 145 ("[O]nce property is transferred from separate property to joint ownership, the property becomes part of the marital estate subject to division even if it is inherited property generally deemed indivisible."); *Wright v. Wright*, 2008 WI App 21, ¶12, 307 Wis. 2d 156, 747 N.W.2d 690 (spouse asserting property is non-divisible must establish "that the character … of the property has been *preserved*" (emphasis added)). However, after considering the witnesses' testimony, the two written agreements between the parties, and the consistent practices of the parties, the circuit court found that Jonathan did not intend to donate those proceeds to the marriage, and then correctly applied that finding to reach the conclusion that the property is non-divisible. We conclude that the factual finding is not clearly erroneous, and the legal conclusion is correct. The court credited and relied on Jonathan's testimony that the second agreement was drafted to reflect the parties' shared consistent intent that they would each separately benefit from the profits and have some discussions about which properties to purchase, but that the properties would be titled solely in Jonathan's name and belong solely to him, and that the paperwork listing Jonathan and Porsche as joint titleholders for the first five properties "didn't match" the shared intent of the parties. The court explained that it also relied on the parties' consistent practice of returning to Jonathan's Fidelity accounts the money used to purchase and renovate each property after each sale. The court explained that it further relied on the parties' agreements, and consistent practice of, allocating the profits from any sale to each of them personally, using the percentage profit breakdowns to which they had agreed.

10

¶21    We now explain why Porsche's arguments to the contrary fail. Porsche argues that the circuit court failed to explain how the two written agreements evidenced Jonathan's lack of donative intent. She argues that, "[t]o the contrary, the agreements expressly provide that [Porsche] had a right to collaborate with [Jonathan] when deciding how the originally inherited funds … would be 'allocated, invested, and spent' to purchase investment properties, which are property rights that are generally exclusive to property owners." However, the record refutes Porsche's argument. In testimony credited by the court, Jonathan explained that the language in the agreements regarding shared decision-making on the use of the inherited money "just meant that [the parties] were going to communicate with each other" and that he did not intend to donate to the marriage the inherited money spent on properties pursuant to those communications. We generally defer to a circuit court's credibility determinations. *See* **Wright**, 307 Wis. 2d 156, ¶21. Implied in the court's reasoning was the basic point that if Jonathan intended that the inherited money used for the properties be donated to the marriage, then no agreement would have been necessary to give Porsche decision-making power over that money, or necessary to provide that any profits from the sales of the properties be allocated to each of them personally, rather than to the marriage.

¶22    Porsche also argues that the circuit court "ignored 'circumstantial historical facts' material to its analysis" when it found that Jonathan lacked subjective donative intent. Specifically, Porsche argues that the court failed to sufficiently take into account Jonathan's testimony that he was aware that Porsche was listed as a joint titleholder on the property deeds as early as 2016, yet he continued to include her name on deeds through and until 2019. While this particular testimony could in itself support the presumption that Jonathan had

donative intent before 2019 with regard to the inherited money, it is not so weighty as to undermine the court's determination that Jonathan rebutted that presumption based on all of the other evidence, including other testimony by Jonathan and the agreements, which support a conclusion that Jonathan lacked donative intent from the start. *See* ***State v. Poellinger***, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) (we defer to the factfinder's weighing of the evidence and reasonable inferences from the evidence); ***Phelps v. Physicians Ins. Co. of Wis.***, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 ("[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" (quoted source omitted)).

¶23 Porsche further argues that the circuit court "placed too great of an emphasis on tracing the inheritance funds." However, the court's findings regarding the parties' consistent practice of returning the money used to purchase and renovate each property to Jonathan's Fidelity accounts are relevant to both tracing and donative intent. The court found that this practice allowed the Court Street proceeds to be traced back to Jonathan's inherited money, and it also found that this practice evidenced Jonathan's subjective intent to keep the money separate and not to donate it to the marriage. Specifically, the court noted that "the agreement was that the principal put into the property would remain with [Jonathan]." To repeat, the court based its finding as to Jonathan's donative intent on the agreements and Jonathan's testimony that the court credited, as well as the parties' consistent practice of returning the money used to purchase and renovate each property to Jonathan's Fidelity accounts.

¶24 Porsche also asserts in an undeveloped manner that the circuit court referenced other "principles" that apply to a court's property division decision but that the court "did not explain how any of these factors would apply to its analysis

of donative intent." But even attempting to understand Porsche's argument on its own terms, she does not explain how these principles apply to the issue here of donative intent or to the court's findings based on the evidence referenced above. We reject this argument as undeveloped. *See Techworks, LLC v. Wille*, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (we are not required to entertain undeveloped arguments).

¶25 In sum, Porsche fails to show that the circuit court's findings—(1) that Jonathan did not intend to donate to the marriage the proceeds from the sale of the Court Street property after it was purchased and renovated using his inherited money, despite having used his inherited money to purchase and renovate jointly-titled properties in the past; and (2) that the Court Street proceeds are traceable to that inherited money, which was at all times kept separate in Jonathan's Fidelity accounts—are clearly erroneous. We also reject all of Porsche's arguments challenging the court's bottom line conclusion about Jonathan's donative intent. Accordingly, we conclude that the court properly awarded the Court Street proceeds to Jonathan as his non-divisible property.

## CONCLUSION

¶26 For the reasons stated above, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.